ALLEN *et al. vs.* SHARP, guardian.

1. Where suit was brought on a note given by S. as trustee for his wife, "for purchase money of house and lot in the town of Forsyth," and judgment was rendered thereon, to be made out of the house and lot named in the note, in a contest between the execution issued thereunder and a younger *fi. fa.* founded on a judgment against the specific property from the sale of which the fund in the sheriff's hands arose, it was competent to show that the consideration of the note was the purchase money of this particular property; and if shown, the older *fi. fa.* would be equitably entitled to the fund.

2. In a contest over a fund in the hands of the sheriff arising from the sale of trust property, if the equitable claims of the *fi, fas.* are equal, that founded on the oldest *fi. fa.* will take the fund.

(a) Where a vendor who had given a bond for title subsequently recovered judgment for the balance of purchase money due, filed a deed to the vendee, and had the property levied on, in a contest over the fund arising from the sale of the property, the lien of his *fi. fa.* would be superior to that of a younger *fi. fa.* founded on a debt for money borrowed to pay part of the purchase money.

Executions.   Judgment.   Lien.   Trust.   Before Judge SPEER.   Monroe Superior Court.   February Term, 1880.

To the report contained in the decision, it is only necessary to add the following:

Sharp, guardian, claimed the fund in the sheriff's hands under a *fi. fa.* issued on a judgment on a note signed by Stone, as trustee for his wife, and which stated that it was for the "purchase money of house and lot in the town of Forsyth." The judgment provided that it was

to be made out of the house and lot named in the note; and the *fi. fa.*, that it should be levied on the house and lot mentioned in the judgment. The testimony in his favor was in substance, as follows: Sharp was guardian of Dillard; he succeeded one Sterne in that capacity. Sterne sole the lot, the proceeds of which are now in controversy, to Stone, trustee, receiving a part of the purchase money, and giving bond for title. Sterne owes Sharp as guardian, and by agreement between the parties he transferred the debt of Stone, trustee, to him. Sharp then took the note sued on, Sterne made him a deed, and he gave a bond for title to Stone, trustee. He stated in his testimony that the way he knew the debt was for purchase money, was from the statements of Stone and Sterne. (The note sued on bears date February 3d, 1874, while the deed from Sterne to Sharp, guardian, is dated April 15th). Before the levy was made, Sharp, guardian, made and filed a deed to Stone, trustee.

Allen *et al.* claimed under an award of arbitrators, subsequently made the judgment of the court against this property. The testimony in their favor was to the effect that Stone, trustee, borrowed money from one Walker, as he stated, to make the first payment to Sterne, on the purchase price of the lot. On this Walker debt Allen and others were securities, and he made them a deed to secure them, of older date than the deed from Sterne to Sharp, guardian. They were compelled to pay the debt, and are now seeking to reimburse themselves.

Willingham & Dunn claimed under a *fi. fa.* founded on a debt for building materials used on the trust estate.

Of the three judgments, Sharp, guardian, was the oldest, Willingham & Dunn, the next, and Allen *et al.* the youngest.

The jury found for Sharp, guardian. The other claimants moved for a new trial, which was refused, and they excepted.

BERNER & TURNER, by H. C. PEEPLES, for plaintiffs in error.

R. P. TRIPPE, for defendant.

CRAWFORD, Justice.

This contest arises upon a rule to distribute the money raised from the sale of a house and lot, sold as the property of S. H. Stone, trustee of his wife, Julia A. Stone. There are three contestants with three *fi. fas.*, and each one claims to have the highest equitable right to the fund.

The first is Sharp, guardian of Dillard, who alleges that the consideration of his debt was the purchase money due upon the house and lot sold.

The second is Allen *et al.*, his co-plaintiffs, who also allege that their *fi fa.* was for the purchase money paid upon the house and lot;

The third is Willingham & Dunn, who allege that their *fi. fa.* was for building material used in the improvement of the said house and lot.

The Sharp judgment is dated August 26th, 1875, is rendered against Stone, trustee, and to be out of the house and lot named in the note, which note recites, as consideration, five hundred dollars for purchase money of house and lot in the town of Forsyth.

The Allen judgment bears date August, 1877, was rendered upon an award of arbitrators, the submission bearing date September 1st, 1876; the award, November 3d, 1876, and which provided that if the parties failed to perform the judgment of the arbitrators, an order might be obtained from the judge of the superior court in term or vacation to compel the enforcement of the same against this house and lot.

The Willingham & Dunn *fi. fa.* was rendered April 22d, 1876, and against the house and lot of Stone, trustee, for

building material used for the improvement of the same.

Thus stood the parties before the court below upon the new trial which was granted by this court at its February term, 1879.

Upon the first trial the money now contended for was ordered paid over to the Sharp *fi. fa.*, which was excepted to, because the contestants insisted, that although it was of older date, yet theirs were issued on judgments rendered against the trust property and sold according to §§3377, 3382 of the Code, whilst the Sharp judgment was not so issued, and was, therefore, void.

In reply, Sharp claimed the money upon the ground that his *fi. fa.* was founded on a lien against the property sold, for the purchase money due thereon, as provided by §3654 of the Code. This court held that there was nothing in his—Sharp's pleadings or judgment, which sufficiently identified the property to justify his claim to the money. It was further held, that his judgment was a valid one, and if the facts were that the money was raised from the house and lot on which the purchase money was due, and for which the judgment was rendered, then it was equitably entitled to the money, notwithstanding that specific house and lot was not described and set forth in the judgment. Upon the new trial, the jury again found in favor of the Sharp *fi. fa.*, he having amended his pleadings so as to conform to the ruling of this court when the case was here before, and again the contestants except.

The case as now presented by the record shows a fund in the hands of the sheriff of some $500.00, raised from the sale of a house and lot as the property of S. H. Stone, trustee, under *fi. fas.* in favor of Sharp and Willingham & Dunn, the latter of which is against the specific property sold, the former against the defendant, and claimed to be against the specific property for purchase money. The right of Willingham & Dunn, therefore, to the payment of their execution is secondary to that of Sharp, if his debt be either for the purchase money, or his judg-

ment prior in point of time and against the property sold. Touching the *fi. fa.* of Sharp, it is by no means clear to us that the debt due by Stone to Sterne was a *bona fide* debt for the purchase money of this house and lot, and it is less so, that the debt from Stone to Sharp was, when viewed in the light of the whole proof, though we do not decide the legal effect of the new contract between Sharp and Stone in their relations of vendor and vendee.

As to the *fi. fa.* of Allen *et al.*, it appears to us that it is immaterial whether that is regular or even illegal, so long as it is admitted by counsel for Sharp, that it arose upon a debt for borrowed money with which to make the first payment for the house and lot, and that a deed to the same of older date than the one from Sterne to Sharp had been executed by Stone to Allen *et al.*, to indemnify them against loss.

If, therefore, all the testimony be accepted as true, both these last *fi. fas.* were founded on the consideration of purchase money, and were their status in other respects the same, then their equities to the fund would be equal. But it will be seen that Sharp reduced his debt to judgment in August, 1875, and conceding that Allen's was all legal and right, it is two years the junior of the other, and must in a contest over money raised by the sale of *defendant's property* yield to its senior adversary. This is not only the rule in cases of strict law, but in equitable proceedings as well, because equity is ancillary, not antagonistic to law.

Where equities are equal, the law will prevail; if they are unequal the superior must prevail, and superior diligence as to time will create such inequality. Code, §§3083, 3087; 3 Kelly, 460.

Thus with the testimony identifying this house and lot as the one against which the Sharp judgment was rendered, and which did not appear in the former adjudication of this case by this court, it would be entitled to the money raised from the sale. If the testimony be in-

sufficient to identify it, then the money having been raised by a sale of the property under the specific judgment of Willingham & Dunn, and the judgment of Sharp against the defendant, when brought into court, unless the specific judgment had a higher lien, which does not appear, then the oldest judgment attached to the fund and was entitled thereto.

Or if it be true that the money borrowed from Walker was used to make the first payment, as insisted by Allen *et al.*, and Stone only had Sharp's bond for titles, and their relations were those of vendor and vendee, a partial payment of the purchase money thus having been paid, brought the Sharp *fi. fa* within §3586 of the Code, and entitled it to the money.

We think, therefore, that the court committed no error in refusing a new trial.

Judgment affirmed.